UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

JERMAINE THROWER,

 Plaintiff,

 v.      CASE NO:

FIRST SERVICE RESIDENTIAL,

 Defendant.

                /

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, JERMAINE THROWER, (hereinafter "Plaintiff" or "Mr. Thrower"), a Florida resident, by and through the undersigned counsel, hereby sues Defendant, FIRST SERVICE RESIDENTIAL (hereinafter "Defendant" or "First Service Residential") and alleges:

## INTRODUCTION

1. The Plaintiff brings this action against Defendant, his former employer, seeking to recover damages for unlawful discrimination based on race and retaliation in violation of his rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") and its implementing Regulations.

2.     As further set forth below, Plaintiff alleges that Defendant unlawfully discriminated against him, altered the terms, conditions, and privileges of his employment because of his race, and retaliated against him for engaging in protected activity in violation of his rights under Title VII.

3.     As a direct and proximate result of unlawful actions, Plaintiff has suffered actual damages including, but not limited to loss of income, loss of opportunity for future income, loss of benefits, and loss of future pay increases. In addition, he has suffered and continues to suffer the loss of his professional and personal reputation, emotional distress, mental anguish, embarrassment, and humiliation.

4.     Plaintiff has incurred costs and attorney's fees in bringing this matter.

### JURISDICTION AND VENUE

5.     This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5.

6.     This Court has jurisdiction to grant declaratory relief, declare the rights and legal relations of the parties, and order further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7.     Venue is proper in the United States District Court for the

Northern District of Florida, Panama City Division, pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred within this District and Division and pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices out of which Plaintiff's claims herein arise were committed within this District and Division. All facts and circumstances arising from this dispute took place in Bay County, Florida.

## PARTIES

8. Plaintiff is a 52-year-old African American male.

9. Plaintiff is a member of a class protected against discrimination and retaliation based on his race under Title VII.

10. During the period from 2024 until November 27, 2025, Defendant employed Plaintiff as a common area cleaner/maintenance assistant.

11. At all times material herein, Plaintiff met the definitions of "employee" and "eligible employee" under all applicable federal and state statutes.

12. At all times material herein, Plaintiff was an employee entitled to protection as defined by Title VII.

13. The Defendant, FIRST SERVICE RESIDENTIAL, is a company with a principal place of business located at 17462 Front Beach Road, Panama City Beach, FL 32413, Bay County, Florida.

14. At all times material herein, Defendant regularly conducted, and continues to conduct, business throughout Bay County, Florida.

15. At all times material herein, Defendant employed fifteen (15) or more individuals and met, and continues to meet, the definition of "employer" under all applicable federal and state statutes including, but not limited to, Title VII.

16. Accordingly, Defendant is liable under Title VII for the unlawful discrimination and retaliation to which it subjected Plaintiff.

## ADMINISTRATIVE PREREQUISITES

17. Plaintiff has properly exhausted all administrative prerequisites prior to filing the instant lawsuit.

18. On December 18, 2025, Plaintiff timely dual filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") against Defendant alleging, among other things, race discrimination and retaliation.

19. On December 31, 2025, the EEOC issued Plaintiff a Notice of Right to Sue in reference to his Charge of Discrimination (EEOC Charge No. 510-2026-02668) against Defendant.

20. All conditions precedent to bringing this action have been performed or have occurred.

## GENERAL ALLEGATIONS

21. From 2024 through November 27, 2025, Plaintiff worked for Defendant as a common area cleaner/maintenance assistant at a condominium complex located at 17462 Front Beach Road, Panama City Beach, FL 32413, Bay County, Florida.

22. Plaintiff was paid $18.00 per hour on a bi-weekly basis and performed all essential job functions at satisfactory or above-satisfactory levels throughout his employment.

23. Plaintiff was the only African American employee working at this location during his employment with Defendant.

24. Plaintiff never received any disciplinary write-ups or warnings throughout his employment with Defendant.

25. Plaintiff's supervisors included Regional Manager Eric (last name unknown), who came to the workplace once a week, and Property

Manager Brianna, who replaced the previous manager in September 2025 and supervised Plaintiff from September 2025 through November 27, 2025.

26. Other employees at the workplace included Kenny Arp (Head maintenance man), Mark (coworker), Kenny's son (who was hired at $21/hour), Mark's daughter, Ms. Donna (weekend secretary), Dawn Mouser, and Jarrett.

27. From 2024 through October 2025, Regional Manager Eric consistently singled out and harassed Plaintiff for activities that were not against company policy, including wearing socks up high, wearing Crocs, having headphones, and using his phone while on the cart.

28. Eric allowed other non-Black employees to engage in the same behavior without consequence or criticism, creating a hostile work environment based on Plaintiff's race.

29. The discriminatory treatment by Eric was so severe that Plaintiff made it his business to stay away from Eric when he came to the workplace.

30. Beginning in September 2025, when Brianna became Property Manager, she made extra work lists specifically for Plaintiff and had him working in the rain on numerous occasions.

31. The "picking at" Plaintiff became extreme after Brianna became

manager, further contributing to the hostile work environment based on Plaintiff's race.

32. On October 1, 2025, Plaintiff asked Property Manager Brianna about renting affordable housing at the condominium complex where they worked.

33. Brianna immediately said no and stated it was not a "great idea" for Plaintiff to rent there, despite this response not being based on any written company policy.

34. Prior to Plaintiff's request, two other First Service employees, both non-Black, were permitted to live at the premises without objection or restriction.

35. On October 2, 2025, Plaintiff was called to the office where Regional Manager Eric was present with Brianna.

36. Eric explicitly told Plaintiff that while it was not against company policy to prohibit employees from renting at the property, Eric "didn't want me to," applying this discriminatory housing restriction only to Plaintiff and not to other non-Black employees.

37. Eric and Brianna also attended a meeting of the HOA Board to discourage Plaintiff from moving onto the property, with Board member

James later recalling that Eric and Brianna sought to discourage Plaintiff from residing at the property.

38. Board member James's wife argued on Plaintiff's behalf during the meeting.

39. Following the October 2, 2025 meeting, Plaintiff engaged in protected activity by filing discrimination complaints with the EEOC, Workers' Compensation, and Defendant's main office.

40. Regional manager Marcus was scheduled to meet with Plaintiff, but Plaintiff canceled the meeting after being advised "to let it go or I'd probably be sabotaged and fired from my job."

41. After Plaintiff filed his discrimination complaints, the work environment became increasingly hostile toward him.

42. On November 23, 2025, Plaintiff requested a raise from Property Manager Brianna, noting that he had been earning $18.00 per hour while new hires, including Kenny Arp's son, were being paid $21.00 per hour for the same work.

43. Brianna told Plaintiff that a raise "wasn't in the budget" despite Defendant clearly having funds to pay new employees significantly more for the same work.

44.    When Plaintiff asked "what budget was the new hire in that was paying him $21," Brianna said "YOU was under the old budget and won't be getting a raise."

45.    This conversation was witnessed by Ms. Donna, the weekend secretary.

46.    Defendant had previously told Plaintiff that his son couldn't work with him, citing a nepotism policy that was not applied equally to other employees, as Kenny Arp had his stepson at the workplace and Mark had his daughter at the workplace.

47.    On November 26, 2025, when Plaintiff returned to work after being off November 24-25, his coworkers Kenny, Mark, and Mark's son began acting strangely toward him and would not speak to him.

48.    During his break on November 26, 2025, Plaintiff was sitting in the break room when Brianna came in and accused him of "sleeping past break."

49.    Plaintiff explained that he wasn't sleeping, and Brianna said "we will talk about it later."

50.    This allegation was false and pretextual, designed to create grounds for Plaintiff's termination in retaliation for his protected activity.

51. On November 27, 2025, the day before Thanksgiving, Plaintiff received a text message to come to the office.

52. Eric and Brianna told Plaintiff he was being terminated for allegedly "sleeping past my break time."

53. Plaintiff tried to explain that he wasn't sleeping, but Eric told Plaintiff to leave the premises or they would call the police.

54. During the termination meeting, Regional Manager Eric told Plaintiff directly that "they didn't want my kind there," explicitly referencing Plaintiff's race.

55. When Plaintiff was getting his belongings, Eric told Plaintiff to turn in his key and that "they didn't need my kind there."

56. When Plaintiff asked "what kind is that," Eric said "just get my stuff and leave before I got in trouble."

57. Property Manager Brianna told Plaintiff to "get my stuff and leave the premises before she called the police," treating him like a criminal.

58. Throughout his employment, Plaintiff observed workplace issues that were ignored by management when committed by non-Black employees, including coworkers using the company spending card for personal items such as gas and tools for side jobs, buying extra cleaning

supplies to take home, Kenny being allowed to clock in at 6:00 am and sleep until 8:00 am, and Kenny storing marijuana in the shop.

59.    As a direct and proximate result of Defendant's discriminatory and retaliatory conduct, Plaintiff has suffered severe depression despite having no prior history of depression or psychiatric treatment, pain, suffering, stress, loss of sleep, psychological issues including suicidal thoughts and racial paranoia, sexual dysfunction requiring medication, increased alcohol consumption to cope, the threat of eviction, strained personal relationships, and the need to seek medical care and obtain prescription depression medication.

60.    Plaintiff has been forced to find new employment at Regal Regency Theater in Panama City as an usher, earning only $15.00 per hour part-time, representing a significant reduction in income compared to his position with Defendant.

**COUNT I**
**VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT**
**Race Discrimination**

61.    Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 60 of this Complaint as though fully set forth herein.

62.    Plaintiff is a 52-year-old African American male.

63.    At all times material herein, Defendant employed Plaintiff and Defendant was an "employer" within the meaning of Title VII.

64.    Moreover, Defendant is a "person" within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(a). Defendant is a "person" within the meaning of 42 U.S.C. § 2000e(a) in that, the definition "includes one or more individuals, governments, governmental agencies, political subdivisions, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under title 11, or receivers." 42 U.S.C. § 2000e(a).

65.    Plaintiff was the only African American employee working at Defendant's location during his employment.

66.    From 2024 through October 2025, Regional Manager Eric consistently singled out and harassed Plaintiff for activities that were not against company policy, including wearing socks up high, wearing Crocs, having headphones, and using his phone while on the cart, while allowing other non-Black employees to engage in the same behavior without consequence or criticism.

67.    Beginning in September 2025, Property Manager Brianna made extra work lists specifically for Plaintiff and had him working in the rain on numerous occasions, with the discriminatory treatment becoming extreme after she became manager.

68.    On October 1-2, 2025, Defendant discriminated against Plaintiff by denying him the opportunity to rent affordable housing at the condominium complex where he worked, despite two other non-Black employees being permitted to live at the premises without objection or restriction.

69.    Regional Manager Eric explicitly told Plaintiff that while it was not against company policy to prohibit employees from renting at the property, Eric "didn't want me to," applying this discriminatory housing restriction only to Plaintiff based on his race.

70.    On November 23, 2025, when Plaintiff requested a raise, Property Manager Brianna told Plaintiff that a raise "wasn't in the budget" despite Defendant clearly having funds to pay new non-Black employees, including Kenny Arp's son, $21.00 per hour compared to Plaintiff's $18.00 per hour for the same work.

71.    When Plaintiff asked about the budget disparity, Brianna said

"YOU was under the old budget and won't be getting a raise," demonstrating disparate treatment based on race.

72. During Plaintiff's termination on November 27, 2025, Regional Manager Eric made explicitly racial comments, telling Plaintiff that "they didn't want my kind there" and "they didn't need my kind there," directly referencing Plaintiff's race.

73. When Plaintiff asked "what kind is that," Eric told Plaintiff to "just get my stuff and leave before I got in trouble," demonstrating consciousness of the discriminatory nature of his statements.

74. Throughout Plaintiff's employment, Defendant allowed workplace violations by non-Black employees that would have resulted in discipline for Plaintiff, including use of company spending cards for personal items, taking company supplies home, sleeping on company time, and storing marijuana on company property.

75. Defendant knew or should have known of the discrimination suffered by Plaintiff.

76. Defendant violated Title VII by subjecting Plaintiff to discrimination because of his race through disparate treatment in terms and conditions of employment, housing opportunities, compensation, and

ultimately termination.

77.    The conduct of Defendant, by and through its employees, supervisors, managers, and agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the discrimination against Plaintiff, deprived him of statutory rights under Title VII.

78.    Defendant's actions constitute discrimination in violation of Title VII.

79.    As a direct, proximate and foreseeable result of Defendant's aforementioned actions, inactions, and violations of Title VII, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; and (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, emotional distress, humiliation, loss of dignity, loss of the capacity for the enjoyment of life, irreparable damages to his family and relationships, severe depression, psychological issues including suicidal thoughts and racial paranoia, sexual dysfunction, and other nonpecuniary losses and intangible injuries.

**WHEREFORE**, the Plaintiff, JERMAINE THROWER, requests trial by

jury of all issues so triable as of right, demands judgment against the Defendant, FIRST SERVICE RESIDENTIAL, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.   Grant judgment in favor of Plaintiff and declare that Defendant has violated Title VII of the Civil Rights Act, as amended, and its implementing Regulations, discriminating against Plaintiff based on his race;

B.   Award sufficient remedial relief to make Plaintiff whole for the individual loss that he has suffered because of the discrimination to which Defendant subjected him, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination he has endured;

C.   Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of the damages caused by Defendant's discriminatory conduct and actions pursuant to Title VII;

D.   Award Plaintiff all other damages available under Title VII,

including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under Title VII, according to proof;

E.  Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.  Award Plaintiff his attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G.  Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT II
## VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT
### Retaliation

80.  Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 60 of this Complaint as though fully set forth herein.

81.  Plaintiff is a 52-year-old African American male and a member of a protected class under Title VII.

82.  At all times material herein, Defendant employed Plaintiff and Defendant was an "employer" within the meaning of Title VII.

83.  Moreover, Defendant is a "person" within the meaning of Title

VII of the Civil Rights Act, 42 U.S.C. § 2000e(a).

84.    On October 2, 2025, following discriminatory treatment regarding housing opportunities at the workplace, Plaintiff engaged in protected activity by filing discrimination complaints with the EEOC, Workers' Compensation, and Defendant's main office.

85.    Plaintiff's complaints alleged race discrimination by Regional Manager Eric and Property Manager Brianna based on their denial of housing opportunities available to non-Black employees and other discriminatory treatment.

86.    Defendant had knowledge of Plaintiff's protected activity through the complaints filed with the company's main office and through Regional Manager Marcus being scheduled to meet with Plaintiff regarding his complaints.

87.    Following Plaintiff's protected activity, the work environment became increasingly hostile toward Plaintiff.

88.    Plaintiff was advised "to let it go or I'd probably be sabotaged and fired from my job," demonstrating Defendant's retaliatory intent.

89.    On November 23, 2025, when Plaintiff requested a raise, Property Manager Brianna's refusal and statement that "YOU was under the

old budget and won't be getting a raise" constituted additional retaliatory conduct following Plaintiff's complaints.

90. On November 26, 2025, Plaintiff's coworkers Kenny, Mark, and Mark's son began acting strangely toward him and would not speak to him, demonstrating the retaliatory atmosphere created by Defendant.

91. On November 26, 2025, Property Manager Brianna falsely accused Plaintiff of "sleeping past break" when he was merely sitting in the break room, creating a pretextual basis for termination.

92. On November 27, 2025, Defendant terminated Plaintiff's employment using the false allegation of "sleeping past my break time" as a pretext for retaliation.

93. The timing of Plaintiff's termination, occurring approximately 56 days after his protected activity and one day before Thanksgiving, demonstrates the retaliatory nature of Defendant's actions.

94. Defendant's stated reason for termination was pretextual, as Plaintiff was not sleeping and the allegation was fabricated to justify retaliation for his discrimination complaints.

95. Throughout his employment, Plaintiff had never received any disciplinary write-ups or warnings and performed all essential job functions

at satisfactory or above-satisfactory levels.

96. Similarly situated employees who had not engaged in protected activity were not terminated for similar or more serious conduct violations.

97. Defendant's treatment of Plaintiff following his protected activity was materially adverse and would dissuade a reasonable employee from making or supporting a charge of discrimination.

98. There is a causal connection between Plaintiff's protected activity and the adverse employment action of termination, as evidenced by the timing and pretextual nature of the termination.

99. Defendant violated Title VII by retaliating against Plaintiff for engaging in protected activity by subjecting him to increasingly hostile treatment and ultimately terminating his employment.

100. The conduct of Defendant, by and through its employees, supervisors, managers, and agents, constitutes unlawful retaliation in violation of Title VII.

101. As a direct, proximate and foreseeable result of Defendant's aforementioned retaliatory actions and violations of Title VII, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; and (c) noneconomic

damages, including, but not limited to, pain and suffering, mental anguish, emotional distress, humiliation, loss of dignity, loss of the capacity for the enjoyment of life, irreparable damages to his family and relationships, severe depression, psychological issues including suicidal thoughts, sexual dysfunction, and other nonpecuniary losses and intangible injuries.

WHEREFORE, Plaintiff, JERMAINE THROWER, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, FIRST SERVICE RESIDENTIAL, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A. Grant judgment in favor of Plaintiff and declare that Defendant has violated Title VII of the Civil Rights Act, as amended, and its implementing Regulations, by retaliating against Plaintiff for engaging in protected activity;

B. Award sufficient remedial relief to make Plaintiff whole for the individual loss that he has suffered because of the retaliation to which Defendant subjected him, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, and any other appropriate nondiscriminatory measures to overcome the effects of the retaliation he has endured;

C.    Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of the damages caused by Defendant's retaliatory conduct and actions pursuant to Title VII;

D.    Award Plaintiff all other damages available under Title VII, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under Title VII, according to proof;

E.    Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.    Award Plaintiff his attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G.    Grant such other and further relief as this Court may deem equitable, just, and proper.

### DEMAND FOR TRIAL BY JURY

Plaintiff respectfully requests a trial by jury.

Date this 4th day of March 2026.

*/s/ Jason W. Imler, Esq*

Jason W. Imler
Florida Bar No. 1004422
Alberto "Tito" Gonzalez
Florida Bar No. 1037033
**Imler Law**
23110 State Road 54, Unit 407
Lutz, Florida 33549
(P): 813-553-7709
Jason@ImlerLaw.com
Tito@ImlerLaw.com
Ashley@ImlerLaw.com
Tiffany@ImlerLaw.com